## BEENE v. HUTTO.

4-4377

Opinion delivered June 15, 1936.

*Culbert L. Pearce,* for appellants.

*R. W. Robins,* for appellees.

MEHAFFY, J. This suit was begun in the Faulkner County Circuit Court. The following petition was filed:

"Plaintiffs are qualified electors and taxpayers of Faulkner county, and, as such, have an interest in the subject-matter of this action and bring suit for themselves and others who are similarly situated, and desire like relief.

"Defendant J. A. Hutto is county judge, defendant John Griffith is clerk of the county court, defendant A. H. Burkett is clerk of the circuit court, defendant Neel Webb is county treasurer, defendant Jason I. Summers is sheriff and ex-officio collector, and defendant Bert M. Tilley is assessor of Faulkner county, having been duly elected, did qualify and now are acting as provided by law.

"On August 21, 1934, plaintiff Roy Rogers, for himself and others, tendered to John Griffith, as county clerk, for filing, a petition in several parts, signed by 676 persons who claimed to be qualified electors of the county, ordering proposed initiative act No. 1, entitled 'An act for the purpose of fixing the compensation and expense of certain officials of Faulkner county, Arkansas, and of fixing the number of their deputies, assistants and clerks, and of fixing the manner in which such compensation and salaries shall be paid, and for the purpose of effecting economies in the expense of government in said county,' to be submitted to the electors of the county, for approval or rejection, at the general election held on November 6, 1934. Copy of said initiative petition, containing the full text and title of said act, is made a part hereof and marked exhibit A.

"Defendant, John Griffith, as such clerk, received said petition, issuing his receipt therefor. Copy of said receipt is made a part hereof and marked exhibit B.

"On September 29, 1934, defendant, John Griffith, as county clerk, after having examined said petition, found and certified, *'That according to the 1934 voters record said petition does have the requisite number of legal and qualified electors which would qualify said petition to be placed upon the ballot in accordance with Amendment No. 7 to the Constitution.'* Copy of said certificate is made a part hereof and marked exhibit C.

"On October 29, 1934, defendant, John Griffith, as such clerk, made and delivered to the sponsors a certified copy of said petition, and the certificate of sufficiency thereto attached, and they caused the same to be published for the time and in the manner prescribed by law. Copy of the proof of publication of said petition and certificate is made a part hereof and marked exhibit D.

"On October 29, 1934, without notice to the sponsors, the board of election commissioners arbitrarily · announced that the ballot title of said proposed act would not appear on the ballots to be used in the approaching general election.

"On the following day, the sponors sought counsel and were advised to obtain stamps or stickers bearing the proposed title of said act, as follows, to-wit:

" 'Initiative act No. 1, of Faulkner County'

" 'An act for the purpose of fixing the compensation and expenses of certain officials of Faulkner county, Arkansas, and of fixing the number of their deputies, assistants and clerks, and of fixing the manner in which such compensation and salaries shall be paid, and for the purpose of effecting economies in the expense of government in said county.

" 'For initiative act No. 1,'

and to invite the use of such stamps or stickers by electors at the polls as a means of expressing their choice and vote for said proposed act. The sponsors thereupon announced through newspapers published in the county, and by handbills, that rubber stamps would be furnished to electors at the various polling places, and,

in accordance with said announcement, procured stamps, bearing the ballot title of said act as above set out, and offered them to electors who appeared at the various polling places throughout the county on election day.

"At said election, which was legally called and legally held, there were 2,101 ballots cast by electors of the county, and 1,187 of said ballots were imprinted and stamped by the voters with the rubber stamp bearing the ballot title of said initiative act, as above described, and no votes were cast against it. The electors thereby expressed approval of said act and cast their ballots for it, giving it a majority of all votes cast by those voting on the question. It thereby became a law 30 days after said election, and at all times since then has been, and now is, in full force and effect as a local initiative act. Said act repealed all other local laws that were in conflict with it.

"At all times since the adoption of said act, the defendants, by agreement and acting in concert, have openly, purposely, systematically and wrongfully refused to abide by or to enforce its provisions, in whole or in part, and, as a result, said act is not being enforced or obeyed by them, their deputies and persons transacting business with them as such officers.

"Under said act, all fees, commissions, emoluments and perquisites of whatsoever kind paid to and received by the defendants as such officers is the property of the county and should be by the recipient paid into the county treasury. The county judge would then be entitled to file claim and receive from the county $2,000 as salary and $600 as expenses; the clerk of the county court $2,000 as salary and $900 for deputy hire; the clerk of the circuit $2,000 as salary and $900 for deputy hire; the county treasurer $1,800 as salary and no deputy hire; the sheriff and collector $2,000 as salary, $2,100 for deputy hire, and actual expenses; and the assessor $1,500 as salary and $900 for deputy hire per annum, but the defendants are not following these requirements. They are drawing salaries and receiving fees under statutes which were in effect before said initiative act was adopted and thereby are receiving much greater amounts

than they are lawfully entitled to receive under said act, all to the detriment of these plaintiffs and others as taxpayers of Faulkner county.

"Plaintiffs have no other adequate remedy at law and therefore demand special relief.

WHEREFORE, premises being seen, petitioners pray that a writ of mandamus issue, commanding and requiring the defendants to file reports showing all fees, commissions, emoluments and salaries received, collected and drawn since said act became effective that they be required to account for and pay into the county treasury all sums so received in excess of the salaries and expenses authorized by said act and, in the event of their failure or refusal to obey said order, that plaintiffs have judgment against each of them, *for the use and benefit of Faulkner county,* for all fees, commissions, emoluments and salaries received, retained and drawn over, above and in excess of such as are provided and authorized by said act that the defendants, and each of them be required to comply with and enforce the provisions of said act in the regular and due administration of the duties of their respective offices; that such further orders be made as may appear necessary to preserve the rights of the plaintiffs and other taxpayers; and that plaintiffs have all other and proper relief." The petition was properly verified.

Notice of hearing was issued and served, and a motion to quash and strike was filed.

Thereafter a summons was issued and served, and the appellees filed the following demurrer:

"The defendants in the above entitled cause, not waiving their motion to strike the petition and motion of the plaintiffs herein from the files of the court to quash the return on the notice served herein, but expressly insisting upon the same, and insisting that no suit has been filed herein, or is pending herein, and that the court is without jurisdiction to make any order herein, demur to said petition and motion and move that same be dismissed on the following grounds:

"(1)  Said petition and motion does not state grounds sufficient to constitute any cause of action herein.

"(2)  Said petition and motion does not state facts sufficient to entitle the plaintiffs to the relief prayed for therein or to any relief herein.

"(3)  There is a misjoinder of parties herein, in that the defendants are improperly joined in said petition and motion.

"(4)  Said petition and motion discloses on its face that it is not brought by the proper parties, for the reason that the plaintiffs are not shown by said petition and motion to have any special interest in the subject-matter in controversy, or any interest therein other than that had by all other taxpayers of Faulkner county; and for the further reason that this action was not brought in the name of the State of Arkansas or by the authority of the State of Arkansas through any of its duly constituted officers.

"(5)  By said petition and motion the plaintiffs seek relief by way of discovery, which is a remedy solely of equitable jurisdiction.

"(6)  By said petition and motion the plaintiffs seek to enforce a continuing duty, and to enforce the continual performance of various acts, all of which is beyond the jurisdiction of the court in a mandamus proceeding.

"(7)  If the facts set forth in the said petition and motion are true the plaintiffs have other plain and adequate remedies."

The court sustained the demurrer, dismissed the complaint, and the case is here on appeal.

A case involving the initiative act came to this court on appeal from the chancery court, and this court held that under I. & R. Amendment No. 7 the only jurisdiction conferred on the chancery court was to review the action of the county clerk in determining the sufficiency of all local petitions for initiating local laws. The court cited and quoted from the amendment to the Constitution as follows: "The sufficiency of all local peti-

tions shall be decided in the first instance by the county clerk * * * subject to review by the chancery court.''

The court further held that the sufficiency of the petition in that case was a moot question when the suit was filed. The suit was filed after the election, and the amendment to the constitution provides: "The failure of the courts to decide prior to the election as to the sufficiency of any such petition shall not prevent the question from being placed upon the ballot at the election named in such petition, nor militate against the validity of such measure if it shall have been approved by a vote of the people." Hutto v. Rogers, 191 Ark. 787, 88 S. W. (2d) 68.

It, therefore, appears that after a question is submitted to and voted upon by the people, the sufficiency of the petition is of no importance. It is not important because, whether sufficient or insufficient, if the measure is adopted by the people at the election, it becomes the law. The I. & R. Amendment also provides that it shall be self-executing, and all of its provisions shall be treated as mandatory.

It is contended first by the appellees that mandamus does not lie to enforce the performance of a continuing or future duty, and to support this contention the case of Automatic Weighing Co. v. Carter, 95 Ark. 118, 128 S. W. 557, is cited. We find nothing in this case that sustains the contention of the appellee. It is said in that case that the writ of mandamus is only employed in unusual cases, and where no other remedy is available. The case cites High's Extraordinary Remedies, § 9, and § 188. That § 9, among other things, provides that the right to issue the writ rests in the sound discretion of the court, and it must also appear that the writ, if granted, requires the performance of acts that is within the power of the respondent to do, as well as his duty to do. But the section further provides that the discretion with which the courts are clothed is not an arbitrary discretion, but it must be exercised under established rules of law and in accordance with well-settled principles.

Section 188 referred to simply provides that if there is another adequate and specific remedy, that the writ should not be granted.

"But the mere fact that there is another remedy, will not prevent the issuance of a writ of mandamus if the remedy is not adequate, or, in other words, if the remedy is not equally convenient, beneficial and effectual." 38 C. J. 693.

The authorities cited by appellees on the question that mandamus does not lie to enforce the performance of a continuing duty are all to the effect that the writ of mandamus will not lie to compel a general course of official conduct for a long series of continuous acts to be performed under various conditions. We have no such situation here.

It is next contended by the appellee that this proceeding was improperly brought for the reason that it was invoked not to protect a private right, but ostensibly to protect the rights of all taxpayers of the county, and it was not brought in the name or by the authority of the State.

"Although in the case of an application for mandamus, where private or corporate rights are affected, the relator must show an interest, the rule established by the preponderance of authority is that, where the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty, the relator need not show that he has any legal or special interest in the result, it being sufficient that he is interested as a citizen in having the laws executed and the duty in question enforced. Or, as the doctrine has been more succinctly stated, private persons may move for a mandamus, to enforce a public duty not due to the government as such, without the intervention of the government law officer." 18 R. C. L. 325.

Section 13 of art. 16 of the Constitution reads as follows: "Any citizen of any county, city or town may institute suit in behalf of himself and all others interested, to protect the inhabitants thereof against the enforcement of any illegal exactions whatever."

It is not only the rule announced by a majority of the courts that a suit may be brought by a private citizen to enforce a public duty, but the above section of our Constitution specifically provides for such suits to be brought to protect the inhabitants against the enforcement of any illegal exactions whatever.

It is contended by the appellee that the complaint failed to state a cause of action entitling appellants to relief in any court. Appellees call attention to the case of *Condren* v. *Gibbs,* 94 Ark. 478, 127 S. W. 731, and also call attention to the Digest with reference to preservation of ballots.

The complaint alleges that the election was legally held and a majority of the voters of Faulkner county voted for the initiative act. The demurrer admits these allegations to be true.

Pleadings under the Code are liberally construed and every reasonable intendment is indulged in favor of the pleader, and in testing the sufficiency of a complaint on general demurrer, the court indulges every reasonable intendment in its favor, and if the facts stated, together with every reasonable inference arising therefrom constitute a cause of action, the demurrer should be overruled. *Manhattan Const. Co.* v. *Atkisson,* 191 Ark. 920, 88 S. W. (2d) 819; *Arkansas Bond Co.* v. *Harton,* 191 Ark. 665, 87 S. W. (2d) 52; *Herndon* v. *Gregory,* 190 Ark. 702, 81 S. W. (2d) 849.

In considering the allegations in the complaint on demurrer, the allegations must be taken as true. If the allegations in the petition in this case are true, on August 21, 1934, a petition was tendered to the county clerk for initiated act fixing the compensation and salaries of county officers. On September 9, 1934, the clerk issued his certificate to the effect that the petition had the requisite number of qualified electors, which would qualify said petition to be placed upon the ballot in accordance with Amendment No. 7 to the Constitution. On October 29, 1934, the county clerk delivered to petitioners a certified copy of the petition and the certificate of sufficiency, and this was published for the time and in the manner prescribed by law. On October 29, 1934,

without notice to the sponsors the board of election commissioners arbitrarily announced that the ballot title of said proposed act would not appear on the ballot at the general election. At the election, legally held, there were 2,101 ballots cast in the county, and 1,187 of them voted for the initiative act. If these allegations are true, a certificate of sufficiency was given to the sponsors, and they of course, were led to believe that the ballot title would be on the ticket. It is alleged that the commissioners arbitrarily refused to have the ballot title printed on the ticket. Amendment No. 7 to the Constitution was adopted by the people for the purpose of reserving to themselves the right to initiate acts, both general and local, and they should not be prohibited from doing this by the arbitrary action of the county clerk or board of election commissioners.

This court has said: "In construing this amendment it is our duty to keep constantly in mind the purpose of its adoption and the object it sought to accomplish." *Reeves* v. *Smith,* 190 Ark. 213, 78 S. W. (2d) 72.

We also said in the above case: "Another reason not less cogent is that Amendment No. 7 permits the exercise of the power reserved to the people to control to some extent at least, the policies of the State, but more particularly of counties and municipalities as distinguished from the exercise of similar power by the Legislature, and since that residuum of power remains in the electors, their acts should not be thwarted by strict or technical construction."

Treating the allegations of the complaint as true, the complaint stated a cause of action. The judgment of the circuit court is, therefore, reversed, and the cause is remanded with directions to proceed with the trial of the case according to law, and not inconsistent with this opinion.

JOHNSON, C. J., McHANEY and BUTLER, JJ. dissent.