The Honorable W.J. "Bill" McCuen Secretary of State State Capitol Little Rock, Arkansas 72201-1094
Dear Mr. McCuen:
This is in response to your recent request for an opinion on the following specific questions involving the filing of political practices pledges:
 1. Whether a county board of election commission has the authority under Arkansas law to keep a candidate's name from appearing on the ballot or to not count a write-in candidate's votes when the candidate failed to file a signed political practices pledge within the filing period?
 2. Whether a county board of election commission has the authority under Arkansas law to keep a candidate's name from appearing on the ballot or to not count a write-in candidate's votes when the candidate failed to file a signed political practices pledge within the filing period but the candidate was not told by either an election commissioner, county clerk, city clerk or other election official that he/she was required to do so?
 3. Whether a county board of election commission has the authority under Arkansas law to keep a candidate's name from appearing on the ballot or to not count a write-in candidate's votes when the candidate failed to file a signed political practices pledge within the filing period and the candidate was told by either an election commissioner, county clerk, city clerk or other election official accepting the filings of the candidate that he/she had completed the process? Although the filing official later learned that a political practices pledge should have been filed, they did not know that requirement at the time the candidate filed.
 4. Whether the Secretary of State or the County Board of Election Commissioners have the authority to certify that any votes for write-in candidates for state or district offices will be counted when the write-in candidate failed to file a political practices pledge within the filing period?
 5. Whether a political practices pledge filed when a candidate was running in a party's primary is still an effective filing when that candidate has lost the primary and now seeks to run as a write-in candidate?
In response to your first question, this office has previously stated that if challenged prior to an election, placement of a candidate's name on the ballot will in all likelihood be enjoined if it is shown that a political practices pledge was not timely filed. See Op. No. 88-041, attached hereto. While there may be exceptions in certain instances based upon a showing of substantial compliance with the filing requirements, it is my opinion that this is a proper statement of the general law in this area. This result follows from the individual's failure to qualify as a candidate for that position. Stillinger v. Rector,253 Ark. 982, 490 S.W.2d 109 (1973). It is therefore my opinion that a county board of election commissioners generally has the authority, if not the duty, to insure that this name does not appear on the ballot.
While we find no cases directly on point with respect to the counting of write-in votes, there is authority for a county board of election commissioners' refusal to count write-in votes where the individual has failed to file a timely notice under A.C.A.7-5-205 of his intention to be a write-in candidate. See, e.g., Byrd v. Short, 228 Ark. 369, 307 S.W.2d 871 (1985). A court would, in my opinion, probably similarly conclude that write-in votes are properly not counted following one's failure to file a timely pledge.
The answer to your second question is the same as the above; the fact that no election official informed the candidate of the filing requirement does not, in my opinion, compel a different result.
Your third question includes additional facts involving an election official's statement that the candidate had completed the filing process, notwithstanding the absence of the required pledge. It must be concluded that this is a factual question, within the province of the judiciary, the resolution of which will depend upon the particular circumstances of each case. It must be noted in this regard that the duties of county boards of election commissioners are often described as ministerial in nature. See, e.g., Starrett v. Andrews, 195 Ark. 1078, 115 S.W.2d 549 (1938); Missouri Pacific Railroad Company v. McCracken, 196 Ark. 311,117 S.W.2d 345 (1938). While there may be instances in which a court would entertain arguments premised upon an election official's misstatement of filing requirements, it is my opinion that a board of election commissioners' discretionary powers do not generally extend to this type of factual review.
The case of Starrett v. Andrews, supra, may be instructive in this regard. The county board of election commissioners refused in that case to certify the results of a particular election due to the absence of proper notice of the election. (The returns of the election were duly certified by the election judges and clerks to the county election commissioners.) 195 Ark. at 1079. The court initially cited to the general ministerial function of election commissioners, noting that "[t]here is little, if any, discretion they may exercise in any matter properly coming before them in the discharge of their duties." 195 Ark. at 1082. However, the court also stated the following:
 We think the real question is whether there was an election in Nevada county on the proposition of the county road commission. It is argued, however, by appellant that since some of the electors voted for and against the proposition that it was the duty of the election commissioners to declare the result, and that they had no discretion whereby they might do otherwise, that if the election was void for any reasons this fact could only be determined by a court of competent jurisdiction. With this proposition of law we really have no controversy. However there are some matters so apparent that an election commission in the discharge of the plainest of duties need not be mistaken.
Id., at 1081. (Emphasis added.) The court then concluded, under the facts presented, that there was no proper notice given of the election and that there was nothing in the case from which notice could reasonably be presumed. Id., at 1084. The court thus affirmed the lower court's refusal to grant a prayer for mandamus requiring the commissioners to certify the vote.
While it thus seems that a board of election commissioners may make certain determinations in its official capacity, it is my opinion that the situation posed in your request does not reflect a matter ". . . so apparent that an election commission in the discharge of the plainest of duties need not be mistaken." Starrett, 195 Ark. at 1081. A factual review to determine what representations were made to and reasonably relied upon by a candidate does not, in my opinion, generally fall within the discretionary powers of an election commission.
It is therefore my opinion, as in response to your first question, that the election commission generally has the authority to keep the candidate's name from appearing on the ballot and to not count write-in votes for a candidate who failed to file a timely pledge, notwithstanding an allegation that he or she was informed that the filing was complete.
While there may be certain instances in which a court would uphold the action suggested under your fourth question, we cannot conclude as a general matter that the Secretary of State or County Board of Election Commissioners has this authority.
Although the answer to your final question is not absolutely clear from a review of the pertinent statutory provisions, it is my opinion that a court would decline to mandate a write-in candidate's filing of another political practices pledge following his or her filing of the pledge before the primary election for that office. Arkansas Code Annotated 7-6-102(a)(4) (Supp. 1987) states:
 Persons who wish to be write-in candidates shall file the political practices pledge at the time of filing the notice to be a write-in candidate.
Section 7-6-102(a)(4) establishes a time-frame within which the pledge must be filed, a requirement that presumably stems from the assumption that a pledge has not yet been filed. The reference, in the singular, to the "the political practices pledge" points to this conclusion. The pledge must be filed within the time specified, but the courts have found substantial compliance in some circumstances. See, e.g., Taaffe v. Sanderson, 173 Ark. 970,294 S.W. 74 (1927); Spence v. Whitaker, 178 Ark. 51, 9 S.W.2d 769
(1928). It may reasonably be concluded that a filing before the time specified under 7-6-102(a)(4) will generally constitute substantial compliance.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.