The Honorable Donna Hutchinson State Representative 24 Rillington Drive Bella Vista, Arkansas 72714-3204
Dear Representative Hutchinson:
I am writing in response to your request for an opinion on the recent incorporation of Bella Vista. You state that "[a]pparently, a subdivision was erroneously included within the map of the proposed incorporated limits of the town." You have enclosed a letter providing more facts concerning the alleged error. The letter you have enclosed indicates that the subdivision property in question was included in both the map and the legal description of the property that was attached to the petition of incorporation. Because the subdivision was outside the limits of the former planned community of Bella Vista, however, the subdivision residents were not aware that their property would be included in the incorporation. Several residents discovered the inclusion of their property shortly before the November election at which the incorporation was approved, when they received absentee ballots apparently containing the question. You state that "[t]he ultimate question is: what, if anything, can be done under the incorporation scheme set out under A.C.A. § 14-38-115 to solve the subdivision's problem and effectively void the portion of the incorporation that included this subdivision?"
RESPONSE
I must note at the outset that I am prohibited from the private practice of law and as such, cannot offer legal advice to the affected residents. In addition, I am not empowered as a fact-finder in the issuance of Attorney General opinions and thus cannot resolve any disputed factual issues arising from this controversy. I can, however, set out a discussion of applicable state law surrounding this topic, which I hope will aid in your understanding of the issues presented. In that regard, I can state that the relatively new statute you reference, A.C.A. §14-38-115, does not itself provide any remedy for such an error or any method to challenge the incorporation. Ordinarily, the available avenues to challenge a municipal incorporation include the specific procedures set out at A.C.A. §§ 14-38-106 and-107, or the more general appeal of a county court's order in this regard to the circuit court. It is not clear that these avenues of redress are applicable to an A.C.A. § 14-38-115
incorporation. In any event, the time periods for pursuing these remedies have apparently passed. Even assuming that any required notification was not made, the statute itself and common law principles indicate that such notification procedures are mandatory if challenged prior to an election and only directory if challenged after an election. In addition, if a challenge to a municipal incorporation measure is filed post-election, it may be considered a "collateral" challenge and, if so, will not be entertained unless it can be shown that the entire incorporation was "void." It does not appear, based on the limited information supplied me, that there are grounds for concluding that the incorporation was "void." As a consequence, the only applicable remedy appears to be the statutory "detachment" proceedings set out at A.C.A. §§ 14-38-1801 — 1803, which require a favorable vote at an election of municipal voters.
The statute you reference, A.C.A. § 14-38-115, was adopted by virtue of Act 1237 of 2005, which "amend[ed] Arkansas Code Title 14, Chapter 38 to add a new Code section, A.C.A. § 14-38-115, offering an "alternative method" of incorporation . . . that is "in addition to the procedures for incorporating a city or town under §§ 14-38-101 through 14-38-108." See Op. Att'y Gen. 2005-081. The new law allows a petition requesting the county judge to call a popular election on the question of municipal incorporation, whereas pre-existing law allows a petition to the county court, which may then order incorporation without a vote of the people. See A.C.A. §§ 14-38-101 — 114 (Repl. 1998) and (Supp. 2005). The new statute was utilized in incorporating the town of Bella Vista and an election was held in November 2006 at which the incorporation was approved.[1]
The statute in question (A.C.A. § 14-38-115), provides for the filing of a petition with the county judge asking for an election on the incorporation. The petition is required to "[d]escribe the territory proposed to be embraced in the incorporated city or town and have attached to it an accurate map or plat of the territory." A.C.A. §14-38-115(a)(2)(A). Any petition presented to the county judge is to be filed in the office of the county clerk, subject to the inspection of any persons interested. A.C.A. § 14-38-115(c). The county judge must then hold a public hearing on the question. A.C.A. § 14-38-115(d)(1). Notice of the public hearing on the incorporation petition must be published in a newspaper of general circulation in the county once a week for three weeks. See A.C.A. § 14-38-115(d)(2)(A) (Supp. 2005) and Op. Att'y Gen. 2005-257. If he finds that the petition is in compliance with certain requirements, the county judge shall enter an order granting the petition to hold an election on the question at the general election. The statute then requires the county clerk to identify all persons who reside within the territory proposed to be incorporated and the names and addresses of all qualified electors residing therein. A.C.A. § 14-38-115(g)(1)(B)(i). The county clerk must give notice of the voter registration deadlines at least forty days before the election by ordinary mail to those persons whose names are on the list. A.C.A. § 14-38-115(g)(2)(B). Subsection (g)(1)(B)(ii) of the same statute states, however, that "[t]he failure to identify all persons residing within the territory proposed to be incorporated or the failure to determine the names and addresses of all qualified electors residing within that territory shall not invalidate or otherwise affect the results of the election." All qualified electors residing in the territory are allowed to vote on the issue. A.C.A. § 14-38-115(g)(1)(C). Notice of the election is given by newspaper publication at least once. A.C.A. § 14-38-115(g)(1)(D). If the results of the election are in favor of incorporation, then, after certification of that fact, the county judge shall endorse on the petition an order that the town is organized and the petition is granted. A.C.A. § 14-38-115(h)(1)(B)(ii).
Although I am not a finder of fact, it appears the letter you have enclosed with your request admits that most of the formal requirements regarding publication and notice in A.C.A. § 14-38-115 were observed. I cannot determine from the facts presented, however, whether the subdivision residents in question received the notice of the voter registration deadlines as required by subsection (g)(2)(B), forty days before the election, or whether this requirement was for some reason inapplicable to the subdivision residents in question. The letter you have enclosed with your request states that: ". . . according to [the] County Clerk. . ., because [the residents'] voting district was not being changed . . . none of [the] residents were contacted or informed of the potential inclusion of [their] property into the new city limits." The residents state that "Nothing in the local newspapers or media coverage, nor in the legal notifications of the election itself, ever alluded to the fact that there was any consideration of including any property that was not already a part of the property commonly known as Bella Vista Village. . . ." The letter you enclose states, however, that the residents were made aware of their property's inclusion a few days before the election by virtue of their receipt of absentee ballots. The residents argue that "had there been an intent to establish a city with boundaries other than those of the original village boundaries . . . there should have been a more deliberate attempt to actually notify the affected citizens" and "[w]ithout a more thorough process of public notification, including certified letter, which is what is lawfully required in Arkansas annexation issues, residents of our subdivision had no way of knowing our property was included on the Bella Vista petition map." The residents apparently argue that even if such notice might not have been required by statute, there should have been actual rather than constructive notice to them that their property was included.
Again, your question is, "what . . . can be done . . . to . . . effectively void the portion of the incorporation that included this subdivision?" Unfortunately, I do not see a remedy other than the statutory detachment proceeding mentioned earlier. This is true for several reasons.
First, I am not aware of any post-election procedure to eliminate or void only a portion of the territory included in the incorporation. Cf., e.g., City of Sugar Creek v. Larkin, 926 S.W.2d 934 (Mo.App. 1996) (refusing to amend incorporation petition to exclude impermissible territory already within the boundaries of another city, instead holding the entire incorporation void, stating that "The error cannot be corrected by the council or the court, because there is no assurance that a sufficient number of the voters who signed the petition would have done so if they had known that the inappropriate area could not have been included," quoting State ex rel. Committee to Incorporate Sappington Concord v. Kersting, 911 S.W.2d 682 (Mo.App. 1995). A statutory avenue to object to the inclusion of only a portion of the territory proposed to be incorporated is provided only pre-election. Section 14-38-103, which is made applicable to A.C.A. § 14-38-115
incorporations by virtue of A.C.A. § 14-38-115(e), allows the county court to permit the sponsors to amend or change the petition at the public hearing. Territory may apparently be removed from the coverage of the petition at this juncture, but not added without requiring new notice and another hearing. A.C.A. § 14-38-103(b)(2). The public hearing on this incorporation has of course already been held. In light of the above, in my opinion, any legal challenge brought at this juncture (post-election), would have to be directed at the entire incorporation and not simply a portion thereof.
Second, it has been stated, at least under the law as it existed prior to the adoption of A.C.A. § 14-38-115, that ". . . there are two distinct procedures for attacking county court orders annexing territory to a municipality — (1) appealing the county court's decision to circuit court, and (2) filing a complaint against annexation in circuit court. The same may be said for the different methods of challenging the incorporation of a city." Campbell v. City of Cherokee Village West,333 Ark. 310, 319, 969 S.W.2d 179 (1998). The first option mentioned by the Campbell court refers to a general appeal from an order of the county court, which is now governed by Rule 9 of the District Court Rules. See former A.C.A. § 16-67-201 and District Court Rules 1(a) and 9 (providing for appeals from the county court within thirty days of the county court order). The second option refers to the special procedure for challenging municipal incorporations that is set out in the pre-existing law at A.C.A. § 14-38-106 and-107. These latter subsections provide a one-month window from the date the county court enters the order for any interested person to file a circuit court complaint alleging that: 1) the territory does not contain the requisite number of inhabitants; 2) the petition does not contain the required number of signatures; 3) that the territory is unreasonably large or small; or 4) is not "properly and sufficiently described." Id. It is not entirely clear, however, that either of these avenues of relief apply to the alternative incorporation process set out at A.C.A. § 14-38-115. Sections 14-38-106 and-107 are not clearly applicable to petitions undertaken pursuant to A.C.A. § 14-38-115, which is a separate statute in the same subchapter and involves a very different procedure.[2] In addition, the general appeal process from orders of the "county court" may not apply to the actions of a "county judge" under A.C.A. § 14-38-115, unless A.C.A. § 14-38-115 is interpreted as referring to the entry of judicial orders by the county court.[3] In any event, each of these avenues of relief mentioned by the Arkansas Supreme Court in Campbell contains a thirty-day deadline for challenging the county judge's order. This period has passed.
Third, even if neither of the avenues of redress above constitute the applicable procedure, and a legal action to challenge the incorporation is not time-barred under those provisions, it is stated as a general matter that notice requirements are mandatory if challenged prior to an election, but directory if challenged after an election. See, e.g., Hannah v. Deboer, 311 Ark. 215, 843 S.W.2d 800 (1992) (allegation that fire improvement district petition did not include required statutory notice could not succeed because notice requirement become directory rather than mandatory after the election and there was no real prejudice because substantial notice was given). The Hannah court cited with approval the following language: "The courts hold that `the voice of the people is not to be rejected for a defect or want of notice, if they have in truth been called upon and have spoken.'" Id. citing Whitaker v. Mitchell, 179 Ark. 993, 18 S.W.2d 1026 (1929), quoting from Wheat v. Smith, 50 Ark. 266, 7 S.W. 161 (1887). This common law principle is supported by the language of the applicable statute in this instance, which states that: "[t]he failure to identify all persons residing within the territory proposed to be incorporated or the failure to determine the names and addresses of all qualified electors residing within that territory shall not invalidate or otherwise affect the results of the election." A.C.A. § 14-38-115(g)(1)(B)(ii).
Finally, to the extent incorporation has been completed and gives rise to a functioning city, any subsequent challenge to a municipal incorporation may be viewed as a "collateral challenge" to the incorporation, which cannot succeed unless the order of incorporation is void ab initio. As stated in Bragg v. Thompson, 177 Ark. 870, 9 S.W.2d 24 (1928), with regard to the A.C.A. § 14-38-106 and-107 procedure for challenging municipal incorporations:
This statute affords persons who desire to prevent the organization of a town, or for testing the legality thereof, a quick and adequate remedy for doing so. On the other hand, it is a short statute of limitations in favor of those who propose the organization. This remedy was not pursued in this case. Instead, appellees waited for more than 90 days — until after the election of officers — to bring this action, and then in the chancery court. It is therefore a collateral attack on the judgment of the county court. In Stumpff v. Louann Provision Co., 173 Ark. 192,292 S.W. 108, this court said that "the county court is a court of superior jurisdiction, and its judgment, rendered in pursuance of such jurisdiction rightfully acquired, cannot be attacked collaterally." Sharum v. Meriwhether, 156 Ark. 331, 246 S.W. 501. Of course a judgment void ab initio may be so declared on collateral attack.
Id. at 25.
Again, it is not clear that the procedure set out in A.C.A. §§ 14-38-106
and-107 is applicable to incorporations accomplished under A.C.A. §14-38-115, or that the residents could have employed this procedure. I cannot definitively conclude that any possible challenge to the Bella Vista incorporation would be time-barred under this or any other avenue of redress. Any post-election challenge to the incorporation of Bella Vista, however, at this late date, may be viewed as a "collateral" challenge to the incorporation, which could not be maintained absent evidence that the entire incorporation was "void."[4] It does not appear in that event, based upon the limited facts presented, that there is any basis for holding the entire incorporation "void."
In the absence of a successful post-election legal action to declare void the entire incorporation, it appears that the only avenue of relief in this instance is the procedure for "detachment," set out at A.C.A. §§ 14-40-1801 — 1803. Under this procedure, the municipal council may submit the question of detaching territory to the qualified electors of the municipal corporation at an election held for the purpose.[5] If successful, the municipal corporation presents a petition to the county court and a hearing is held pursuant to A.C.A. § 14-38-103. See A.C.A. § 14-40-1801.
Again, I cannot provide legal advice to private parties (A.C.A. §25-16-701), and cannot determine any disputed issues of fact relating to this controversy. I hope the foregoing is helpful to your understanding of the legal issues involved.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] It is my understanding that Bella Vista is now an incorporated town, but has a pending petition to become a city of the first class.
[2] A.C.A. § 14-38-115 itself contains no provision for challenging the incorporation. It does provide that "the procedure for a hearing set forth in § 14-38-103 shall be followed in the proceeding concerned in this section to the extent applicable." It is not clear, however, that this reference also borrows any provisions in the pre-existing subchapter with regard to challenging the incorporation.
[3] It is unclear in this regard whether the use of the term "county judge" in A.C.A. § 14-38-115 contemplates the "county court" entering the orders required at A.C.A. § 14-38-115(f)(1) and (h)(1)(B)(ii) in a judicial capacity, or whether the statute entails some type of executive orders issued by the "county judge." As I recently stated in Op. Att'y Gen. 2007-009, "[t]he "county court" is . . . presided over by one judge, the "county judge," who, when so presiding, acts in a judicial, rather than an executive capacity. See Arkansas Constitution, art. 7, § 28 and A.C.A. § 14-14-1105(a). . . . [I]t clearly still exists, and consists of the county judge, wearing a judicial hat." Id., quoting Ops. Att'y Gen. 2006-011, 2004-139, and 1997-081.
[4] The "collateral" challenge bar may only apply, however, to the extent the county judge's orders are deemed to have been entered in a judicial capacity. See supra, n. 3 and Pertuis v. Williams, 137 Ark. 425,208 S.W. 789 (1919).
[5] It does not appear that A.C.A. § 14-40-1801(c), which provides detachment proceedings for "unimproved and uninhabited wetlands" without an election, or A.C.A. §§ 14-40-1901 to-1903, which provides detachment proceedings for certain property incorporated for more than ten years and unsuitable for urban development without an election, are applicable to this particular territory.